FILED BY _C.O.S_ D.C.

NOV 2 6 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

DIMITRI PATTERSON,

       Plaintiff,

vs.

Pamela Bondi

       Defendant,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No:

**DEMAND FOR JURY TRIAL**

**VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**4TH AMENDMENT**
**5TH AMENDMENT**
**8TH AMENDMENT**
**13TH AMENDMENT**
**14TH AMENDMENT**

**42 U.S.C. 1986**
**Malicious Prosecution**
**Abuse of Process**

# INTRODUCTION

1.    This case involves a private citizen, Dimitri Patterson, hereinafter DP, whose due process has and continues to be strategically violated and obstructed by state officials under the direct authority of Attorney General Pamela Bondi, through the abuse of her executive power to oppress DP's due process and cause irreparable harm. DP has exhausted every administrative and legal remedy available to him before filing this instant action, and has been faced with deliberate indifference at every level. DP is left with no other available

remedy but to petition this Court to stand as a bulwark to prevent the named
Defendant in this Complaint from continuing to violate his due process rights.

2.      Defendant, Pamela Bondi is currently spearheading false prosecution against
DP and the unlawful detention of DP at the Orange County Jail in Orlando, FL,
and currently at the Turner Guilford Knight Correctional Center in Miami, FL.
The invidious scheme here is to derail the Plaintiff from rightfully pursuing
prosecution against her peers in federal cases Patterson v. Miami-Dade County
ET AL, US Court Southern District of Florida, 18-CV-20878-MGC, and
Patterson v. Orlando Orange County ET AL, 6:18-CV-950-CEM-GJK, US
Court Middle District of Florida.

3.      Pamela Bondi's sole intention is to coerce DP into retaining an attorney on a
non-existing case, by using unlawful detainment as her primary tool for
coercion, so that she can falsely prosecute DP by using the *Logan v. State*
doctrine. DP will continue to exercise his Constitutional Right and will never
retain an attorney.

4.      The factual allegations stated in the Complaint herein, shows a pattern of
practice that systemically violates the Plaintiff's and African Americans' rights
(Protected class), whom not only have been victims of excessive force and
wrongful arrests by law enforcement officers, but have also been discriminated
against during court proceedings as well.

## JURISDICTION

5.      This court has Jurisdiction under 28 U.S.C. § 1331, § 1343. This action is brought pursuant to the 4th, 5th, 8th, 13th, and 14th Amendments of the United States Constitution, 42 U.S.C. § 1986.

## VENUE

6.      Venue is proper, pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1391, because the events giving rise to this complaint occurred in this district.

## PARTIES

7.      Dimitri Patterson is a private U.S. citizen who has clearly established constitutional protected rights guaranteed to him by the United States Constitution.

8.      Pamela Bondi is the current Attorney General for the State of Florida who is being sued in her individual capacity.

## ATTORNEY GENERAL DUTIES
### Constitutional Duties of the Attorney General

9.      The revised Constitution of Florida of 1968 sets out the duties of the Attorney General in Subsection (c), Section 4, Article IV, as: "...the chief state legal officer."
By statute, the Attorney General is head of the Department of Legal Affairs, and supervises the following functions:

Serves as legal advisor to the Governor and other executive officers of the State and state agencies.

Defends the public interest.

Represents the State in legal proceedings.

Keeps a record of his or her official acts and opinions. Serves as a reporter for the Supreme Court.

## NOTIFICATION OF CONSPIRACY AND CIVIL RIGHTS VIOLATIONS

10.     In October 2018, Pamela Bondi was notified of a purported warrant entered into the FDLE Database. **{Exhibit B}**

11.     On November 6, 2018, Pamela Bondi was notified by the Third District Court of Appeals of a Writ of Habeas Corpus and a Writ of Prohibition/Mandamus filed against Judge Oscar Rodriguez-Fonts and the Miami-Dade Corrections and Rehabilitation Department by DP. **{Exhibit B}**

12.     On November 8, 2018, Pamela Bondi was notified by the Florida Supreme Court of a Writ of Prohibition/Mandamus filed against Judge Oscar Rodriguez-Fonts by DP for acting in clear absence of jurisdiction. **{Exhibit B}**

13.     On November 23, 2018, Pamela Bondi was notified of the unlawful detainment of DP at the Turner Guilford Knight Correctional Center. **{Exhibit B}**

14.     On November 24, 2018, Pamela Bondi was notified of the unlawful detainment of DP at the Turner Guilford Knight Correctional Center. **{Exhibit B}**

15.     On November 25, 2018, Pamela Bondi was notified of the unlawful detainment of DP at the Turner Guilford Knight Correctional Center. **{Exhibit B}**

## STATEMENT OF FACTS

16.     On November 23, 2016 at 8:00 p.m., seven Police Officers from the Orlando-Orange County Sherriff's Department appeared at the Plaintiff's mother's home with the intent to violently act on purported warrant information entered in the Florida Department of Law Enforcement Database. The Plaintiff places a phone call to the Orlando Orange-County Sherriff's Department notifying them of the harassment. The complaint was disregarded.

17.     On November 23, 2016, the Plaintiff's brother was asked to step outside of the home and handcuffed for no legal reason and without any evidence of an official warrant.

18.     On November 23, 2016, the Plaintiff's sister asks to see the warrant and one of the Officers responds by stating, "We need him to come down the street where our cars are parked, and then we can show the warrant to him". Family members of the Plaintiff proceeded to demand documentation from the rogue Officers. After repeated demands from the family members, the handcuffs were removed from the Plaintiff's brother, and thereafter, the Officer's left the Plaintiff's mother's home.

19.     On February 11, 2018, Deputy M. Shaheed, Badge #2915 of the Orlando-Orange County Sheriff's Department, pulls the Plaintiff's brother over in

Avalon Park, FL 32828. When the Plaintiff's brother pulls over to the side of the road, Deputy Shaheed proceeded to call for back up. Deputy Shaheed then approaches the vehicle to question the Plaintiff's brother about the Plaintiff's whereabouts. While questioning the Plaintiff's brother, four vehicles from the Orlando-Orange County Sheriff's Department appear at the scene. Several Officers proceeded to approach the vehicle. Once the Officers realized that the Plaintiff was not in the vehicle, the Officers abruptly left the scene. Deputy Shaheed then issues a citation to the Plaintiff's brother. **{See Exhibit A}**

20.      On October 16, 2017, two Officers from the Orlando-Orange County Sheriff's Office stakeout the Plaintiff's mother's home with the intent to stalk and harass the Plaintiff.

21.      Between October 2017 and June 2018, the Plaintiff received reports from neighbors and family members that Officers from the Orlando-Orange County Sheriff's Office repeatedly staked out the Plaintiff's mother's home with the intent to harass and violate the Plaintiff's civil liberties.

22.      Between April 30, 2018 and May 7, 2018, U.S. Marshals and undercover Officers from the Orlando-Orange County Sherriff's Office harass and stalk Plaintiff's brother by following him to and from his place of employment (Florida Hospital).

23.      On April 30, 2018, between 9:15 and 9:30 A.M., a U.S. Marshal and undercover Officers from the Orlando-Orange County Sheriff's Office arrive at Bank of America located at 10201 W. Colonial Dr., Ocoee, FL 34761, to harass and stalk the Plaintiff's family members.

24.      On April 30, 2018, each in unmarked vehicles, a U.S. Marshal and five-to-six undercover Officers from the Orlando-Orange County Sheriff's Office, follow the Plaintiff's family members from Bank of America in Ocoee, FL onto the 408 East/West Expressway, and then proceeded to pull the Plaintiff's brother over at Exit 10A on the 408 East/West Expressway heading east.

25.      On April 30, 2018, an undercover Officer from the Orlando-Orange County Sheriff's Office approached the Plaintiff's brother's vehicle and states, "Where is Dimitri'? The Plaintiff's brother responds by asking the Officer why was he being pulled over and if he was under arrest. The Officer responds stating, "We're conducting an investigation, and we need to ask you a couple of questions about Dimitri". The Plaintiff's brother responds stating that he wasn't telling the undercover Officer anything about the Plaintiff, and if they weren't arresting him, he should be allowed to leave. The undercover Officer then responds stating, "Do you know it's a crime aiding and abetting a fugitive?"

26.      On April 30, 2018, the Plaintiff places a 911 call to the Orlando-Orange County Police Department to report the illegal harassment of his brother by rogue undercover Police Officers and a U.S. Marshal.

27.      On April 30, 2018, five minutes after the 911 call was placed by the Plaintiff, an undercover Officer communicated to the Plaintiff's brother that he was free to leave, and the rogue U.S. Marshal and undercover Police Officers left the scene.

28.      On May 3, 2018, the Plaintiff and his girlfriend, Kathy Thabet, checked into the Waldorf Astoria Hotel.

29.     On May 7, 2018, the Plaintiff is kidnapped from the Waldorf Astoria Hotel's pool bathroom, located at 14200 Bonnet Creek Resort Ln, Orlando, FL 32821, by two non-uniformed U. S. Marshals and eight non-uniformed Orlando-Orange County Police Officers. The rogue non-uniformed U.S. Marshals and non-uniformed Police Officers never presented a valid warrant or adhered to the Uniform Criminal Extradition Act. [Video footage is available]

30.     On May 7, 2018, after physically accosting the Plaintiff in a pool bathroom, and then kidnapped from the Waldorf Astoria Hotel, the non-uniformed U.S. Marshals and the non-uniformed Orlando-Orange County Police Officers proceeded to take the Plaintiff to a security video room inside the hotel where there were other Waldorf Astoria employees.

31.     On May 7, 2018, while the Plaintiff was being attacked in the pool bathroom, Matt Reabeau proceeded to shut the entrance off from the pool bathroom to prevent Ms. Thabet from entering after he was repeatedly being notified that an illegal arrest was taking place in the pool bathroom.

32.     On May 7, 2018, Matt Rebeau, an employee of the Waldorf Astoria who diligently and zealously assisted the non-uniformed rogue U.S. Marshals and non-uniformed Orlando-Orange County Sheriff's Police Officers without proof of a valid warrant states, "Not in here. We have to take him out back". The non-uniformed Marshals and non-uniformed Police Officers proceeded to hold the Plaintiff hostage outside in the parking lot behind the hotel, while handcuffed on the ground between two parked unmarked vehicles.

33.     On May 7, 2018, when confronted by Kathy Thabet about the kidnapping of the Plaintiff, Christopher Kost, Manager at the Waldorf Astoria stated that he

knew nothing about the incident and had no documentation from the non-uniformed rogue U.S. Marshals, or, the non-uniformed rogue Orlando-Orange County Police Officers.

34.     On May 7, 2018, the Plaintiff, while handcuffed, repeatedly asked to see a valid warrant and badge identification numbers from the non-uniformed U.S. Marshals and non-uniformed Police Officers. The required legal documentation was never presented.

35.     On May 7, 2018, an Orlando-Orange County Sheriff's Department vehicle appears with one Police Officer in the driver's seat. The non-uniformed U.S. Marshals and non-uniformed Police Officers proceeded to escort the Plaintiff to the Officer's vehicle.

36.     On May 7, 2018, the Orlando-Orange County Police Officer transports the Plaintiff to the Orlando-Orange County Jail, and proceeded to book the Plaintiff without presenting a valid warrant to the Plaintiff.

37.     On May 8, 2018, Orlando-Orange County Judge, Jeanette Bigney, issues an illegal bond for one hundred fifty thousand (150,000.00) dollars for purported case B-15-34548 with the purported charges of "rule to show cause" and "contempt of court", without verifying a valid warrant pursuant to Florida Rules of Criminal Procedure 3.121 and 3.131(j). Judge Bigney then proceeds to state "I've verified that the information on this case is valid, all you have to do is post the $150,000.00 bond and you will be released. There is nothing further".

38.     On May 8, 2018, following Judge Bigney's bond hearing, the Orlando-
Orange County Jail refuses to release the Plaintiff and illegally detains him on a
"no bond" hold without the legal chain of documentation.

39.     On May 8, 2018, the Plaintiff's mother and Ms. Thabet retain the services
of Alfredo Zamora of the Zamora Law Firm, LLC in Orlando, FL, for the
purpose of getting the Plaintiff released after being illegally detained.

40.     On May 8, 2018 at 3:20 A.M., Ms. Thabet notifies Cornita Riley,
Director of the Orlando-Orange County Department of Corrections via email,
making her aware of the Plaintiff being illegally detained. The Plaintiff's
mother also emails Chief Cornita Riley at 7:03 A.M. on May 8, 2018, informing
her of the Plaintiff being illegally received and detained. {See Exhibit C}

41.     On May 9, 2018, Miami-Dade County Correctional Officers from the
Turner Guilford Knight Correctional Facility (TGK), transports the Plaintiff
from the Orlando-Orange County Jail to TGK without adhering to the Uniform
Criminal Extradition Act.

42.     On May 9, 2018, TGK illegally receives the Plaintiff without a valid alias
capias warrant, or, commitment order, then detains the Plaintiff in 24-hour
solitary confinement in the psych ward for three days.

43.     On May 10, 2018, a TGK Correction Officer approaches the Plaintiff's
cell telling him that he has court and asks, "Do you know which Judge you're
seeing today?" The Plaintiff responds and says, "Judge Rodriguez-Fonts." Then
the Correction Officer states, "No. You're going to see Judge William Altfield".
The Plaintiff replies and says, "Show me the paperwork". The Correctional

Officer replies and says, "I don't have it. I'll show it to you when we get to the van". Then the Plaintiff replies and says, "I'm not going anywhere until I see the paperwork and that Judge Altfield is a Defendant in a Federal suit, and I won't be going in front of him".

44.     On May 10, 2018, Attorney Zamora tells Ms. Thabet telephonically that he will have an attorney named Dennis Gonzalez appear on the Plaintiff's behalf for a "bond hearing" in front of Judge Rodriguez-Fonts on May 10, 2018.

45.     May 10, 2018, the Plaintiff's mother and Ms. Thabet attend the purported hearing, and Dennis Gonzalez never appears, and there was no record of the Plaintiff having a hearing on May 10, 2018.

46.     On May 10, 2018, Deputy Chief Anthony Watts, on behalf of Chief Cornita Riley, responds via email to the Plaintiff's mother on Thursday, May 10, 2018, at 7:04 P.M., stating that, "Based on our agency's review of your concerns, it was determined the appropriate documentation was submitted by the arresting agency. However, at this time Dimitri Patterson is no longer in our custody and has been transferred to the Miami-Dade County Jail". **{See Exhibit C}**

47.     On May 11, 2018, Miami-Dade County Circuit Court Judge, Oscar Rodriguez-Fonts, conspires with Attorney Zamora and Orlando-Orange County, and proceeds to abuse his discretion by verbally issuing illegal bonds to the Plaintiff in the amounts of thirty thousand ($30,000.00) dollars and one hundred fifty thousand ($150,000.00) dollars, and then demands the Plaintiff to

surrender his passport on abandoned Case F-17-6392. It's to be noted that Rodriguez-Fonts has no jurisdiction over the Plaintiff. {See Exhibit D}

48.     On May 11, 2018, Judge Rodriguez-Fonts abuses his discretion by proceeding to set purported court proceedings and a "trial hearing" for August 9, 2018 and August 20, 2018, for the sole purpose of harassing the Plaintiff with full knowledge that Case F-17-6392 has been abandoned by the State pursuant to Florida Jurisprudence 2d 1151, 1163 & 1164. A purported "Plea" and "Trial" date was added to the Miami-Dade Clerk of Courts Criminal Docket on 06/05/2018, and set for 06/20/2018 at 9:15 a.m.

49.     On May 22, 2018, Attorney Zamora emails the Plaintiff in regards to purported court dates for Cases B-15-34548 and F-17-3692. Attorney Zamora has full knowledge that both cases are foreclosed. {See Exhibit C}

50.     On May 24, 2018, the Plaintiff, emails Attorney Zamora, requesting the charging documents for Cases B-15-34548 and F-17-3692, which were never received. {See Exhibit C}

51.     On May 24, 2018, Attorney Zamora emails the Plaintiff stating that he doesn't have a charging document and that he has not seen one in relation to the contempt case. Attorney Zamora continues to conspire by stating that the statute of limitations has not expired for Case F-17-3692. Attorney Zamora is a board certified attorney and has full knowledge that Case F-17-3692 was abandoned by the State. {See Exhibit C}

52.     On May 30, 2018, Attorney Zamora emails the Plaintiff stating that, "If you do not go to court on 06/04/2018 before Judge Altfield, the court will issue a warrant for your arrest and you will be held without a bond". {See Exhibit C}

53.     On October 23, 2018, without probable cause and as retaliation from Defendant, Orlando-Orange County (Case 6:18-CV-950-GJK), around 3:40PM after being followed on the Florida State Road 408 and then to the RaceTrac gas station on the corner of West Colonial Drive (Highway 50) and S. Bluford Avenue in Ocoee, FL, DP was aggressively approached by both an Orange County and Ocoee Police Officer with revolvers aimed directly in front of his face. Immediately thereafter, DP was surrounded by ten (10) Orange County Police Officers, claiming he was under arrest for an outstanding warrant, which was never produced pursuant to Florida Rules of Procedure and Florida Rules of Judicial Administration. DP is currently being detained at the Orange County Department of Corrections as a hostage, for the sole purpose to stifle his pending cases in Federal Court.

54.     For the sole purpose of undermining his federal cases, the Orange County Department of Corrections are making daily attempts to administer deadly medication to the Plaintiff, and are consistently threatening to forge his signature on a waiver and medical documents that he refuses to sign. We would hate for what occurred in August 2015 with Max Gracia to occur again, or, the corruption scandal that occurred from 2008-2013 under Sheriff Hutchens' watch with the intentionally doctoring of records still occurring.

55.     On Wednesday, October 24, 2018 at 12:18AM, Brenda Patterson sent an Email notification concerning the incident to Deputy Chief Watts, Deputy Chief Quinones, Mayor Teresa Jacobs, Sheriff Jerry Demings, Mayor Carlos

Giminez, Director Daniel Junior, and Acting Assistant Attorney General, John M. Gore. **[See Exhibit C]**

56.     On Wednesday, October 24, 2018 around 10:35AM, DP, once again, unlawfully went before the Honorable Judge Bigney who is presently a Defendant in a Federal lawsuit, Case 6:18-CV-950-CEM-GJK. At 1:09PM, Brenda Patterson received an Email response from Deputy Chief Watts ensuring her that the unofficial matter concerning DP will be researched and either himself, or, Deputy Chief Quinones will follow up within 24 hours. As of Wednesday, October 24, 2018, DP is being held in the Orange County Jail awaiting to be illegally extradited to Miami-Dade County.

57.     Miami-Dade Corrections and Rehabilitation Department illegally transported DP on October 31, 2018, and now, for the past 31 days and counting, the Turner Guilford Knight Correctional Center (TGK) is continuing to illegally and unlawfully detain DP.

58.     On November 1, 2018, and in the clear absence of jurisdiction and for the sole purpose of retaliation, DP appeared before Judge Oscar Rodriguez-Fonts at a non-docketed Court hearing at 1035, and prior to going on record, Judge Rodriguez-Fonts asked DP where was his legal counsel. DP asked Judge Rodriguez-Fonts why would he need an attorney for an **expired** case? Judge Rodriguez-Fonts stated, "I do not want to talk about details of the case". DP then continued to advise Judge Rodriguez-Fonts that he could not be impartial, as he was already named as a Defendant in a Federal Suit that DP had filed and that a Habeas Corpus was already filed and that again this case was discharged, and that Judge Rodriguez-Fonts was continuing to violate DP's Civil Rights. **{Exhibit B}** Judge Rodriguez-Fonts again stated, "He was not going to discuss

details but wanted to know if DP would get an attorney." DP then continued by citing the Florida Rules of Criminal Procedure as it applied to the speedy trial rule, as well as citing the Florida Rules of Judicial Administration as it pertained to the Filing of Information, and an executed AC warrant. DP again advised Judge Rodriguez-Fonts that F-17016392 is an **invalid** and **expired** case, and that his obvious retaliation stems from an existing Federal Lawsuit (Case No: 6:18-CV-950-GJK). Judge Rodriguez-Fonts then had a side bar in which he did not entitle DP, the Pro-Se, to participate in. DP inquired as to how he would still be remanded while the Court continues to set additional court dates, when pursuant to Florida Jurisprudence 2(d), 1151, 1153, 1163, 1164, and 1165, Case F-17016392 is **invalid, expired, and discharged,** and in addition, pursuant to State v. Clifton, 905 So. 2d 172 (Fla. DCA 2005), the Court could not continue to attempt and try to hear this case. The Judge called for a recess and dismissed DP.

59.    On November 5, 2018 at 09:47:50,  in the clear absence of jurisdiction and for the sole purpose of provoking contempt charges against DP, Judge Oscar Rodriguez-Fonts conducted a purported Habeas Corpus hearing.

60.    On both November 6, 2018 and November 16, 2018, Miami-Dade County/MDCR attempted to illegally transport DP to the Lawson E. Thomas Courthouse Center to have rogue Police Officers ambush DP, in order for the Eleventh Judicial Circuit of Florida to once again put false charges on DP.

61.    Once again, on November 14, 2018 and in the clear absence of jurisdiction, Judge Rodriguez-Fonts held a purported and non-docketed hearing

for the sole purpose to have rogue Police Officers ambush DP, in order for the Eleventh Judicial Circuit of Florida to put false charges on DP.

62.        On November 16, 2018 at 9:00AM, and in the clear absence of jurisdiction, Judge Oscar Rodriguez-Fonts held another purported hearing for the sole purpose of conspiring with Attorney Barry Witlin, to give an illegal impression of Attorney Witlin being DP's legal Attorney of Record. Judge Rodriguez-Fonts then proceeded to deny Attorney Witlin's Motion to Withdraw, which was electronically filed on October 27, 2017. Judge Rodriguez-Fonts then instructed the Court to give Attorney Witlin copies of the **denied** Motion to Discharge/Dismiss, Motion to Disqualify, and the **dismissed** Writ of Habeas Corpus.  Judge Rodriguez-Fonts closed the purported hearing with setting yet another purported hearing for December 4, 2018 at 9:00AM.

63.        On November 18, 2018, Barry Witlin sends an email to DP confirming that his Motion to Withdraw was granted on October 31, 2017. **{See Exhibit C}**

## COUNT I
### Violation of the 4th Amendment
### Pamela Bondi

64.        Plaintiff re-alleges and incorporate the allegations set forth in paragraphs 14 – 46 & 51.

65.        Because of the acts committed in paragraphs 14 – 46 & 51, Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being,

overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Florida, and elsewhere as a direct and proximate result of the Defendant's conduct, and he is entitled to damages and injunctive relief.

## COUNT II
### Violation of the 5th Amendment
### Pamela Bondi

66.      Plaintiff re-alleges and incorporate the allegations set forth in paragraphs 1 – 4 & 14 – 63 in this Complaint.

67.      Plaintiff has a constitutional protected right in the Fifth Amendment and is entitled to due process and to be free in life, liberty and in his person.

68.      Pamela Bondi has violated the Plaintiff's Fifth Amendment by the act of deliberate indifference.

69.      The Plaintiff has no other alternative for a remedy.

70.      The 5th Amendment puts Pamela Bondi on notice that her conduct would be clearly unlawful.

71.       The conduct of Pamela Bondi has proven to be arbitrary and an intentional obstruction of the Plaintiff's procedural due process when prosecuting a state criminal case.

72.        DP has clearly shown a substantial risk of harm to his person.

73.        Pamela Bondi was made aware on several occasions of the substantial risk of serious harm that existed.

74.        A reasonable official would have been compelled to draw an inference to the risk shown and would have thoroughly investigated the civil rights violations within email and postage notifications.

75.        Because of the acts committed in paragraphs 1 – 4 & 14 – 63, Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Florida, and elsewhere as a direct and proximate result of the Defendant's conduct, and he is entitled to damages and injunctive relief.

## COUNT III
### Violation of the 8th Amendment
### Pamela Bondi

76.        Plaintiff re-alleges and incorporate the allegations set forth in paragraphs 1 – 4 & 14 – 63 in this Complaint.

77.        Because of the acts committed in paragraphs 1 – 4 & 14 – 63, Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to

his family, personal, community, civic, and business relationships in Florida, and elsewhere as a direct and proximate result of the Defendant's conduct, and he is entitled to damages and injunctive relief.

## COUNT IV
### Violation of the 13th Amendment
### Pamela Bondi

78.     Plaintiff re-alleges and incorporate the allegations set forth in paragraphs 3, 14, 16, 17, 28-31, 34 – 42, 45 – 47 & 53 – 63 in this Complaint.

79.     Because of the acts committed in paragraphs 3, 14, 16, 17, 28 – 31, 34 – 42, 45 – 47 & 53 – 63, Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Florida, and elsewhere as a direct and proximate result of the Defendant's conduct, and he is entitled to damages and injunctive relief.

## COUNT V
### Violation of the 14th Amendment
### Pamela Bondi

80.     Plaintiff re-alleges and incorporate the allegations set forth in paragraphs 1 – 4 & 14 – 63 in this Complaint.

81.     Plaintiff has a constitutional protected right in the 14th

Amendment and is entitled to due process and to be free in life, liberty and in his person.

82.　　　　Pamela Bondi has violated the Plaintiff's 14th Amendment by the act of deliberate indifference.

83.　　　　The conduct of Pamela Bondi has proven to be arbitrary and an intentional obstruction of the Plaintiff's right to the equal protection of the laws.

84.　　　　DP has clearly shown a substantial risk of harm to his person.

85.　　　　Pamela Bondi was made aware on several occasions of the substantial risk of serious harm that existed.

86.　　　　A reasonable official would have been compelled to draw an inference to the risk shown and would have thoroughly investigated the civil rights violations within all email and postage notifications.

87.　　　　Because of the acts committed in paragraphs 1 – 4 & 14 – 63, Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Florida, and elsewhere as a direct and proximate result of the Defendant's conduct, and he is entitled to damages and injunctive relief.

## COUNT VI
### Malicious Prosecution
### Pamela Bondi

88.        Plaintiff re-alleges and incorporate the allegations set forth in paragraphs 1 – 4, 44 – 45, & 58 – 63.

89.        Because of the acts committed in paragraphs 1 – 4, 44 – 45 & 58 - 63, Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Florida, and elsewhere as a direct and proximate result of the Defendant's conduct, and he is entitled to damages and injunctive relief.

## COUNT VII
### Abuse of Process
### Pamela Bondi

90.        Plaintiff re-alleges and incorporate the allegations set forth in paragraphs 1 – 4, 14 – 63.

91.        Because of the acts committed in paragraphs 1 – 4 & 14 – 63, Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Florida,

and elsewhere as a direct and proximate result of the Defendant's conduct, and he is entitled to damages and injunctive relief.

**Count VIII**
**Violation of U.S.C. 1986**
**Pamela Bondi**

92.          Plaintiff re-alleges and incorporate the allegations set forth in paragraphs 9 – 15.

93.          Because of the acts committed in paragraphs 9 – 15, Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Florida, and elsewhere as a direct and proximate result of the Defendant's conduct, and he is entitled to damages and injunctive relief.

**RELIEF**

**WHEREFORE**, the Plaintiff, Dimitri Patterson, respectfully demands that this court:

94.          Plaintiff hereby request a jury trial on all issues raised in this Complaint.

95.          Enter a judgment in favor of the Plaintiff in the amount of ten

million (10,000,000.00) dollars pursuant to 42 USC 1986, 28 U.S.C. § 1343.

96.          Institute prosecution on the Defendant named in this Complaint pursuant to 18 U.S.C. 242.

97.          Grant permanent injunctive relief enjoining and restraining Pamela Bondi from pursuing a false prosecution against Dimitri Patterson.

98.          Grant injunctive relief directing Pamela Bondi to order the Turner Guilford Knight Correctional Center to immediately release Dimitri Jonthiel Patterson on his own recognizance.

Dimitri Patterson
3701 Wilshire Blvd #530
Los Angeles, CA 90010
The1king83@gmail.com Email
213-739-2800 Fax
407-420-7734 Phone

## Verification

Pursuant to 28 U.S.C. § 1746 I, Dimitri Patterson, declare as follows:

1. I am a Plaintiff in the following case and a citizen in the United States of America and a resident of Florida.

2. I have personal knowledge of the factual statements set forth in the foregoing *Verified Complaint for Damages and Injunctive relief,* and if called on to testify I would competently testify as to the matters stated herein.

3. I verify under penalty and perjury under the laws of the United States of America that the factual statements in this *Complaint* concerning myself and the actions of the federal and state officers named in this *Verified Complaint* are true and correct.

Executed on October 19, 2018.

Dimitri Patterson